## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **c/o United States Attorney's Office** | ) | **Civil Action No.** |
| **555 Fourth St., N.W.** | ) | |
| **Washington, D.C.   20530** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| | ) | |
| **$108,000 ASSOCIATED WITH BANK OF** | ) | |
| **AMERICA CASHIER'S CHECKS 0533193,** | ) | |
| **0533194, 0533195, AND 0533196;** | ) | |
| **$997.00 IN UNITED STATES CURRENCY;** | ) | |
| **$3,300 IN MONEY ORDERS;** | ) | |
| **AND A 2012 VOLVO C70,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

*COMES NOW*, the plaintiff United States of America, by and through the United States

Attorney for the District of Columbia, to bring this verified complaint for forfeiture in a civil action

*in rem* against the defendant properties, which are $108,000.00 in United States funds associated

with Bank of America cashier's checks 0533193, 0533194, 0533195, and 0533196, which law

enforcement seized on June 28, 2013, $997.00 in United States currency, which law enforcement

seized on June 19, 2013, $3,300.00 in assorted money orders, which law enforcement seized on

June 19, 2013, and a 2012 Volvo C70, VIN YV1672MC2CJ132062, which law enforcement

seized on June 19, 2013.  In further support of its cause, plaintiff states as follows:

## NATURE OF THE ACTION AND DEFENDANT *IN REM*

1.      This is a civil action *in rem* for the forfeiture of the defendant properties.  Pursuant to 21 U.S.C. § 881(a)(6), property is subject to forfeiture to the United States if it is "moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance, . . . proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate" any violation of Title II of Pub.L. 91-513, commonly called the Controlled Substances Act, as amended, codified at 21 U.S.C. § 801, *et seq.*  Additionally, pursuant to 21 U.S.C. § 881(a)(4), conveyances which facilitate the transportation, sale, receipt, possession, or concealment of controlled substances are subject to forfeiture.

2.      The defendant properties are $108,000.00 in funds associated with Bank of America cashier's checks 0533193, 0533194, 0533195, and 0533196, which law enforcement seized on June 28, 2013, $997.00 in United States currency, which law enforcement seized on June 19, 2013, $3,300.00 in assorted money orders, which law enforcement seized on June 19, 2013, and a 2012 Volvo C70, VIN YV1672MC2CJ132062, which law enforcement seized on June 19, 2013.  The defendant property is in the custody of the United States Drug Enforcement Administration.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction of this civil action by virtue of 28 U.S.C. § 1345, because it has been commenced by the United States, and by virtue of 28 U.S.C. § 1355(a), because it is an action for the recovery and enforcement of a forfeiture under an Act of Congress.  Venue is proper in this District by virtue of 28 U.S.C. § 1355(b)(1), because this is a forfeiture action or proceeding brought in the district court f o r  the district in which any of the acts or omissions giving

rise to the forfeiture occurred, and by virtue of 28 U.S.C. § 1395, because a civil proceeding for the forfeiture of property may be prosecuted in the district in which the property is found.  The defendant property is now, and during the pendency of this action will be, in the jurisdiction of this Court.

4.      This civil action *in rem* for forfeiture is governed by 21 U.S.C § 881, 18 U.S.C. § 983, the F e d e r a l  Rules of Civil Procedure, and the Supplemental Rules for Admiralty Or Maritime Claims And Asset Forfeiture Actions, particularly Rule G.

## STATEMENT OF FACTS

5.      Beginning in March 2013, the Drug Enforcement Administration (DEA) began an investigation of Ivan Lamont Robinson for violations of: 21 U.S.C. §§ 841(a)(1) and 846, that is conspiring to distribute and possess with intent to distribute controlled substances; 18 U.S.C. §§ 1956(a)(1), 1956(b)(1), and 1956(h), that is conspiring to conduct and directly conducting financial transactions which involve property that represents the proceeds of a specified unlawful activity with the intent of promoting the carrying on of the specified unlawful activity, and to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of the specified unlawful activity; Title 18 U.S.C. §§ 1957 and 1956(h), that is conspiring to engage and directly engaging in monetary transactions of more than $10,000 in property derived from specified unlawful activity; 18 U.S.C. §1035, that is making or causing to make fraudulent statements in claim forms in connection with health benefit programs; and 18 U.S.C. §1347, that is executing, or attempting to execute, a scheme to defraud and to obtain money from health benefit programs.

6.      The DEA initiated its investigation of Robinson after it received information and investigative leads from the Metropolitan Police Department in the District of Columbia.  The

DEA also received complaints from a pharmacy in the District of Columbia stating that Robinson was illegally prescribing Schedule II narcotics, namely Oxycodone, to patients and prescribing such substances to the vast majority of his patients in the same quantity and strength, without any apparent legitimate medical purpose.

7.     The investigation further revealed that Robinson's patients traveled from Maryland, Virginia, Delaware, and Pennsylvania to obtain prescriptions for scheduled narcotics.  This conduct is consistent with illegal drug seeking addicts who cannot obtain prescriptions lawfully from their local health care professionals.

8.     As part of the investigation, DEA agents executed an undercover operation, in which they acted as patients seeking pain medication.  The undercover operatives learned that Robinson only accepted money orders as payment for his fees, and that Robinson would not accept cash payments for the office visits.  Robinson directed his patients to purchase money orders from a nearby Pharmacy.

9.     Robinson would often forbid his patients from signing the money orders in the purchaser field and/or from detaching the receipt portion of the money order during the office visit.  This practice allowed Robinson to maintain both the unsigned money order and receipt. Engaging in such conduct is common money laundering practice for criminal wrongdoers, as it allows them to conceal the generation of unlawful proceeds and trace the source of such proceeds.

10.     On March 11-12, 2013, three officers acting in an undercover capacity (referred to as UC1, UC2, and UC3) conducted three separate undercover calls to Robinson's office. Thereafter, on two separate occasions, UC1 and UC2 received prescriptions for the purchase of controlled pain narcotics, without the appropriate screening of their medical documents and

symptoms.  The UCs received these prescriptions subsequent to payment of $370 via unsigned money orders to one of Robinson's employees.

11.     On June 19, 2013, law enforcement executed a search warrant at the business office of Ivan Robinson located on the 2000 block of  Martin Luther King Jr. Av., S.E., Washington, D.C. During the search, Robinson consented to a search of his vehicle, a 2012 Volvo C70 convertible, VIN YV1672MC2CJ132062.

12.     Law enforcement seized $997.00 of U.S. currency from Robinson and $3,300.00 in blank money orders from inside his 2012 Volvo C70.

13.     Law enforcement also seized the 2012 Volvo, which was registered to Robinson. Documents located in the vehicle revealed that Robinson purchased it on or about June 11, 2013 for $42,849.62.  Robinson traded in two vehicles with a trade-in value of $2,079.75, leaving a balance of $40,769.87 as the purchase price of the defendant vehicle.  A subsequent financial analysis traced the source of the payment for the balance of the vehicle to a withdrawal by Robinson for $40,769.87 from his tainted Bank of America account (as further described below).

14.     The seized $997.00 in U.S. Currency, $3,300.00 in money orders, and 2012 Volvo C70 comprise three parts of the four defendant properties.

15.     While executing the search warrant, law enforcement had the opportunity to interview Robinson and one of his employees.  The employee indicated that he made several deposits of money, which was generated from Robinson's pain clinic, into the business account at Bank of America ("Target Account" hereinafter).

16.     Robinson stated that 97% of his business was from treating spinal patients. Robinson further stated that before he begins treatment with a patient, his staff reaches out to the

patient's primary care physician to obtain a contract agreeing to the treatment of the patient. Robinson claimed to also have patients fill out a patient history form, to include social habits, occupation, physical and medication history.  However, at no time did Robinson ask this information of UC1 and UC2.  UC1 and UC2 were only required to provide their name, date of birth, social security number, address, date of their office visit and provide their driver's license for a copy to be made.

       17.     Subsequent to speaking with law enforcement, Robinson travelled to a Bank of America branch and emptied the Target Account which contained the proceeds of his suspected illegal business.  Specifically, he purchased four cashier's checks numbers 0533193, 0533194, 0533195, and 0533196 in the amount of $27,000.00 each.

       18.     Law enforcement reviewed bank statements for the Target Account, which was in the name of "DBA IVAN L. ROBINSON AND ASSOCIATES, IVAN  L ROBINSON SOLE PROP."  The following deposits in this account corroborate the unexplained infusion of cash and money orders into said account.

| Date of Deposit | Value of Deposit |
| --- | --- |
| | |
| 04/19/2013 | $70,000.00 |
| 04/23/2013 | $20,720.00 |
| 04/23/2013 | $1,506.00 |
| 04/25/2013 | $4,860.00 |
| 05/06/2013 | $4,440.00 |
| 05/07/2013 | $2,960.00 |
| 05/08/2013 | $4,070.00 |
| 05/09/2013 | $5,280.00 |
| 05/15/2013 | $15,224.00 |
| 05/31/2013 | $3,555.00 |
| 06/05/2013 | $12,950.00 |
| 06/06/2013 | $35,150.00 |
| 06/12/2013 | $70.00 |

| 06/13/2013 | $11,470.00 |
| 06/17/2013 | $6,590.00 |
| **TOTAL:** | **$198,845.00** |

19.     On June 28, 2013, law enforcement seized the $108,000.00 associated with the four

cashier's checks, each in the amount of $27,000.00, which Robinson purchased with tainted funds

from the Target Account.

20.     The seized $108,000.00 in cashier's checks is one part of the four defendant

properties.

21.     On November 19, 2013, the DEA received a claim of interest for the $997.00 U.S.

Currency and money orders valued at $3,300.00 from Robinson.  In it, Robinson stated that he was

the owner of the defendant properties.

22.     On December 27, 2013, the DEA received a claim of interest for the 2012 Volvo

C70 from Robinson.  In it, Robinson stated that he is the owner of the defendant property.

23.     No other parties filed a claim to the defendant properties.

## <u>COUNT ONE</u>

24.     The factual statements made in paragraphs 1 through 24 are re-alleged and

incorporated by reference herein.

25.     The defendant property is money, negotiable instruments, securities, and a thing of

value furnished or intended to be furnished by a person in exchange for a controlled substance,

proceeds traceable to such an exchange, or moneys, negotiable instruments, or securities used or

intended to be used to facilitate a violation of 21 U.S.C. § 801, et seq.

26.     As such, the defendant properties are subject to forfeiture to the United States under

21 U.S.C. § 881(a)(6).

## COUNT TWO

27.     The factual statements made in paragraphs 1 through 24 are re-alleged and incorporated by reference herein.

28.     The defendant properties are properties that were involved in, or traceable to, financial transactions which involved property that represents the proceeds of a specified unlawful activities, that is, the distribution of controlled substances and health care fraud, with the intent of promoting the carrying on of these specified unlawful activities, and to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of the specified unlawful activities, in violation of 18 U.S.C. §§ 1956(a)(1), 1956(b)(1), and 1956(h).

29.     As such, the defendant properties are subject to forfeiture to the United States, pursuant to 18 U.S.C. § 981(a)(1)(A), as property, real or personal, involved in transactions in violation of 18 U.S.C. § 1956, or as any property traceable to such property.

## COUNT THREE

30.     The factual statements made in paragraphs 1 through 24 are re-alleged and incorporated by reference herein.

31.     The $108,000.00 associated with Bank of America cashier's checks 0533193, 0533194, 0533195, and 0533196, and the 2012 Volvo C70, VIN YV1672MC2CJ132062, are properties that were involved in, or traceable to, monetary transactions of more than $10,000 in property derived from specified unlawful activities, that is, the distribution of controlled substances and health care fraud, in violation of 18 U.S.C. §§ 1957 and 1956(h).

32.     As such, the defendant properties are subject to forfeiture to the United States, pursuant to 18 U.S.C. § 981(a)(1)(A), as property, real or personal, involved in transactions in

violation of 18 U.S.C. §§ 1957 and 1956(h), or as any property traceable to such property.

## COUNT FOUR

33.     The factual statements made in paragraphs 1 through 24 are re-alleged and incorporated by reference herein.

34.     The defendant properties are properties, which constitute or were derived from proceeds traceable to a violation of 18 U.S.C. § 1035 (False Statements Relating to Health Care Matters).

35.     As such, the defendant properties are subject to forfeiture to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), as properties, real or personal, which constitute or were derived from proceeds traceable to a violation of section18 U.S.C. § 1035 (Health Care Fraud).

## COUNT FIVE

36.     The factual statements made in paragraphs 1 through 24 are re-alleged and incorporated by reference herein.

37.     The defendant properties are properties, which constitute or were derived from proceeds traceable to a violation of 18 U.S.C. § 1347.

38.     As such, the defendant properties are subject to forfeiture to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), as properties, real or personal, which constitute or were derived from proceeds traceable to a violation of section18 U.S.C. § 1347.

**WHEREFORE**, the plaintiff respectfully requests that, as to the above-referenced defendant property, due process and warrant of arrest *in rem* issue according to law; that, pursuant to law, notice be provided to all interested parties to appear and show cause why the forfeiture should not be decreed and the defendant property be condemned as forfeited to the United States of America; and for such other and further relief as this Court may deem just, necessary and proper.

Respectfully submitted,

 */s/ Ronald C. Machen Jr*
RONALD C. MACHEN JR.,
D.C. Bar No. 447889
United States Attorney

*/s/ Zia M. Faruqui*
Zia M. Faruqui,
D.C. Bar No. 494990
Assistant United States Attorney
555 4th Street, N.W., Fourth Floor
Washington, D.C.  20530
zia.faruqui@usdoj.gov
(202) 252-7117

## **VERIFICATION**

I, Michael A. Sponheimer Jr., a Task Force Officer with the Drug Enforcement Administration, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement agents and that everything represented herein is true and correct.

Executed on this   14th   day of February 2014.

/s/ Michael A. Sponheimer Jr.
Task Force Officer
Drug Enforcement Administration